## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| REALTIME DATA, LLC d/b/a IXO, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:11-cv-6696-KBF |
| | ) | 1:11-cv-6701-KBF |
| vs. | ) | 1:11-cv-6704-KBF |
| | ) | |
| MORGAN STANLEY, ET AL., | ) | JURY TRIAL DEMANDED |
| | ) | ECF Case |
| *Defendants.* | ) | |
| | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF THE PATENTS-IN-SUIT FOR FAILURE TO SATISFY THE DEFINITENESS AND WRITTEN DESCRIPTION REQUIREMENTS OF 35 U.S.C. § 112

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT.........................................................................................................2
      A.    There Is No Written Description of the Claimed Invention ....................................2
      B.    There is No Evidence That the Disputed Terms Are Definite................................6
      C.    No Genuine Dispute of Material Fact Precludes Summary Judgment ...................9

III.  CONCLUSION.....................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010).............................................................................3, 4

*United Carbon Co. v. Binney & Smith Co.*,
  317 U.S. 228 (1942)..............................................................................................6

*Vas-Cath  Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991))...........................................................................4

### STATUTES & CODES

35 U.S.C. § 112....................................................................................................6, 7, 10

37 C.F.R. § 1.906(a)-(c)........................................................................................7

MPEP § 2658.........................................................................................................7

I.      INTRODUCTION

Realtime's brief in opposition to Defendants' motion for partial summary judgment is striking more for what it does not say than for what it does.  In response to Defendants' written description challenge, Realtime nowhere identifies the precise locations in the patent where it believes there is written description support for the challenged aspects of its claims.  Because Realtime cannot identify any such support, its opposition instead focuses on arguments that do not answer the relevant question for written description: whether any portion of the patents' specifications (*i.e.* the portions of the patents before the claims) demonstrate that the inventors were in possession of the allegedly novel decompression method they first claimed eight years after filing their patent application.  Review of Realtime's opposition brief demonstrates that the answer is no.

Likewise, rather than responding to Defendants' indefiniteness challenge by providing evidence that the disputed terms had an identifiable meaning to persons of skill in the art at the time the patent application was first filed, Realtime's brief makes arguments that are uninformative on that key issue.

Rather than address the relevant issues, Realtime's opposition brief repeatedly emphasizes that the terms content independent data decompression ("CIDD") and content dependent data decompression ("CDDD") (as well as somewhat different phrases that Realtime says are logically the same) were used in the original patent applications.  But this is not enough to satisfy 35 U.S.C. § 112, which requires that the now-claimed invention be described in the specification of the patent, and that the claims be definite.  Of course, mere recitation of the words "content," "dependent,"  "independent," "data," and "decompression" neither describes the now-claimed invention nor demonstrates that CIDD or CDDD have definite meaning.

Contrary to Realtime's position, the specifications do not disclose a descriptor that tells a decoder anything other than what encoding algorithm was used, and there is no suggestion in the specifications that the descriptor tells the decoder whether the contents of the data analyzed were recognized before selecting an encoder or encoding technique.  There also is no disclosure of any new encoding or decoding algorithms, as both the content dependent and independent encoders (the "D" and "E" encoders) use the same "well-known" algorithms.  In short, Realtime's failure to directly address Defendants' arguments demonstrates that partial summary judgment based on lack of written description and/or indefiniteness is proper in this case.

## II.    ARGUMENT

### A.    There Is No Written Description of the Claimed Invention

Realtime acknowledges that the two claim limitations at issue,

decompressing the data block with a selected lossless decoder utilizing *content dependent data decompression, if the descriptor indicates the data block is encoded utilizing content dependent data compression,*

decompressing the data block with a selected lossless decoder utilizing *content independent data decompression*, *if the descriptor indicates* the data block is encoded *utilizing content independent data compression*

('747 Patent, claim 1)(emphasis added) require one decompression technique "if the descriptor indicates the data is encoded utilizing content dependent data compression' [CDDC] and another if the descriptor indicates the data is encoded utilizing content independent data compression [CIDC]."  (Realtime Opp. Br. 18-19).  Realtime's proposed constructions of CDDC and CIDC acknowledge that they do not simply compress data, but also include selecting one or more content independent or content dependent encoders depending on whether the encoding system was able to identify the type of data to be encoded.  (*See* Defs. Opening Br. Sec. II(A))

Tellingly, Realtime's opposition brief never specifically identifies any portion of the patent specification that provides written description support for two elements of the "invention" in the asserted claims:

> (1) a "descriptor" that indicates not only what algorithm was actually used to encode the data, but also whether a content independent or content dependent encoder was selected to apply that algorithm, and
>
> (2) a "decoder" that "utiliz[es]" either CIDD or CDDD based on both the particular compression algorithm used to encode the data and whether that algorithm was applied by a content dependent or a content independent encoder.

Instead of identifying any portion of the written description provides support, Realtime argues that "as expressly *claimed* in the patents, the descriptor not only can, but also does, indicate if the data block is encoded utilizing content independent data compression or content dependent data compression. (Realtime Opp. Br. 20-21) (emphasis added).  However, the claims at issue were not part of the original disclosure and, therefore, as a matter of law cannot provide written description support.  It is the originally filed written description that must provide that support.  *Ariad Pharms., Inc. v. Eli Lilly and Co.,* 598 F.3d 1336, 1346-51 (Fed. Cir. 2010).

Realtime's opposition argues that (1) the word "decompression" appears numerous times in the patent specifications; (2) the string of words "content dependent data decompression" is present at least once in the patents; and (3) the patents do not affirmatively disavow the invention Realtime now asserts it made.  These points are, however, entirely irrelevant when assessing the written description requirement.

***First***, whether the word "decompression" appears in the patents 18 times or 180 times, the mere presence of that word alone cannot satisfy the written description requirement.  The two limitations at issue require more than "decompression" using the "reverse" of whatever algorithm was used actually to compress the data.  The claims require "utilizing content

dependent data decompression, if the descriptor indicates the data block is encoded utilizing content dependent data compression" or "utilizing content independent data decompression, if the descriptor indicates the data block is encoded utilizing content dependent data compression." Patent '747, claim 1. Thus, for the claims to be valid, the patents' written descriptions must indicate that the inventors had possession of such a decompression procedure in 2001 at the time they filed their original patent application. *Ariad Pharms., Inc.,* 598 F.3d at 1351 (quoting *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563 (Fed. Cir. 1991)).

**Second**, the same is true for the string of words "content dependent data compression." The claims require more than that disclosure. Since the content dependent and content independent encoders may use the same prior art algorithms, simply identifying a compression algorithm would not indicate whether content dependent or a content independent data compression was used to compress any data. As set forth in Defendants' opening brief, the originally filed specification contains no teaching of choosing between content independent data decompression versus content dependent data decompression based on whether the descriptor indicates the encoding algorithm was selected as a result of CIDC or CDDC. Realtime and Dr. Shamos confirm this shortcoming, as they have not pointed to any such disclosure.

While the patents describe an *encoding* process which includes a "content dependent" or "content independent" component, they nowhere describe a *decoding* process where decompression is performed "utilizing content dependent data decompression, if the descriptor indicates the data block is encoded utilizing content dependent data compression" or "utilizing content independent data decompression, if the descriptor indicates the data block is encoded utilizing content dependent data compression." None of the portions of the specification to which Realtime points supplies such a description.

That the claims lack adequate written description is, indeed, confirmed by portions of Realtime's own argument.  Realtime states that "data streams compressed using Realtime's novel … CIDC and … CDDC techniques cannot be decompressed using conventional decompression methods" (Realtime Opp. Br. 6-7), and Realtime's expert is clear that "a data stream compressed using Realtime's method requires an analogous decompression method [and that] [c]onventional decompression methods would fail at least because they would not be able to make use of the descriptors in the data stream."  (Shamos Decl. ¶ 6.)  Thus, it appears that Realtime is arguing the claimed decoders must be able to do something that conventional decoders cannot.  The patent specifications, however, indicate that there is nothing new or special about the decoders, and say nothing about what changes must be made to a conventional decoder to give it the capabilities that Realtime now claims.  To the contrary, the patents say the data extraction module "analyzes the input data block using *methods known by those skilled in the art*," ('747 patent, col. 14:49-54)(emphasis added) and the decoders "may include those lossless encoding techniques currently *well-known within the art."*  (*Id.* 14:63-65) (emphasis added).  For example, U.S. Patent No. 5,870,036 to Franaszek (cited in Defendants' video tutorial) teaches that descriptors are old.

Thus, prior art decoders can use a descriptor that identifies one of the "well-known" prior art algorithms used to compress the appended data, but according to Realtime they cannot "make use of the [claimed] descriptors in the data stream."  (Shamos Decl. ¶ 6.)  No portion of the specification provides written description of how a prior art decoder must be changed so that it can, as claimed, decompress encoded data based on a descriptor that identifies whether the data was encoded using CIDC or CDDC.  Thus, there is no written description support for these claim limitations.

*Finally*, because Realtime cannot point to any portion of the written description disclosing a descriptor that "indicates" whether CIDC or CDDC was utilized to encode any particular data (in addition to indicating the encoding algorithm that was used), it resorts to the strange argument that there is written description support because "there is no teaching in the patents that limits a descriptor to identifying only an encoding technique" and "nothing at all in the patents forbids the descriptor from indicating whether content dependent or content independent compression was used."  (Realtime Opp. Br. 21).  That is precisely the wrong analysis under Section 112, which requires that "[t]he specification *shall contain* a written description of the invention."  35 U.S.C. § 112, ¶ 2 (emphasis added).  The law requires express support for the claims in the original written description.  Indeed, Section 112 is designed to prevent patent applicants from doing exactly what Realtime attempts to do here – obtain new claims covering subject matter the inventors did not invent years after they filed an application on their alleged invention.

## B.  There is No Evidence That the Disputed Terms Are Definite

Noticeably absent from Realtime's lengthy opposition on indefiniteness are (1) any explanation of *how* "content dependent" or "content independent" data decompression differs from plain old (prior art) decompression and (2) any explanation of *what* it means for decompression to be "content dependent" or "content independent."  These are, of course, the key inquiries established by the Supreme Court and Federal Circuit for assessing whether the definiteness requirement is met.  *See, e.g.*, *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942) ("The statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise.").

Instead of setting forth any reasoned analysis based on the patent specifications or other evidence of how the words "content independent data decompression" and "content dependent data decompression" would have been understood by a person of skill in the art at the time of the invention, Realtime's opposition brief engages in three tactics that are unhelpful (and indeed irrelevant) to whether the claims meet the definiteness requirement of 35 U.S.C. § 112.

First, Realtime incorrectly suggests that the reexamination request filed by CME implicitly conceded that the claims are definite.  (Realtime Opp. Br. 7-9.)  However, the *inter partes* reexamination filed by CME could not and did not consider whether the claims at issue in this motion satisfy the definiteness and written description requirements of 35 U.S.C. § 112.  A claim of indefiniteness or written description cannot be raised in such a proceeding.  *See* 37 C.F.R. § 1.906(a)-(c) (limiting consideration of Section 112 requirements to added or deleted subject matter); *see also* Patent & Trademark Office, *Manual of Patent Examining Procedures* § 2658 (8th ed. 2010).  Moreover, the U.S. Patent Office ("PTO") and Article III courts interpret claim language in very different ways.  CME recognized this when it filed its reexamination request, and for that reason pointed out that the PTO "claim constructions do not necessarily correspond to the construction of claims under the legal standards that are mandated to be used by the courts in litigation" and said that claim constructions for the purpose of the reexamination "are not binding … in any litigation related to the '747 patent."  *See* Declaration of Nicole E. Feit Exs. A and B (extracts from CME's requests for reexamination).

Because of strict limits on the issues that can be raised in reexamination, the difference in how the PTO and a court may construe claims, and CME's express recognition of the difference, CME's reexamination argument that claims were anticipated under the PTO standard during reexamination could not and did not concede, implicitly or otherwise, that the limitations at issue

here, properly construed under the judicial standard, are definite or have written description support.[1]

Second, Realtime's criticism of Defendants for stating that the phrase "content dependent data decompression" never appears in the patent specification (which it does not), and list of how many times the word "decompression" appears in the patents-in-suit (Realtime Opp. Br. 14-15), provides the Court with no relevant information as to whether those words have a definite meaning.  They do not, and the patents nowhere state what either CDDD or CIDD means.

Realtime's assertion that CIDC and CDDC are "compression techniques or algorithms" (Shamos Decl. ¶ 10) and not simply "procedures for selecting encoders" (Realtime Opp. Br. 12) does nothing more than add to the confusion.  As Realtime's own proposed claim constructions for those terms indicate, CIDC and CDDC include procedures for selecting encoders based on analysis of data, and also compress that data using the selected encoders.

 Third, Realtime's unexplained proclamation that these terms have "clear and unmistakable meaning" (Realtime Opp. Br. 13) is refuted by the fact that Realtime never explains how one gets from the words of the claims to its proposed claim constructions, much less how those words would differentiate the forms of decompression encompassed by the claims from prior art decompression.  Realtime's argument that its two decompression techniques are novel (*i.e.*, were not known to one of ordinary skill in the art), if accepted, actually supports the conclusion that CIDD and CDDD are indefinite, because Realtime admits that neither is defined in the specification or has been construed before.  (*See* Shamos Decl. ¶ 7.)  If CIDD and CDDD

---

[1] Realtime's citation to *Enzo Biochem* (Realtime Opp. Br. 9) is inapposite.  That case merely stands for the proposition that a court cannot hold that a claim, as construed by it, is invalid on both anticipation and indefiniteness grounds.  *Enzo* does not suggest that a defendant is precluded from raising both defenses.

were not previously known, they could not have a definite meaning at the time of the invention to persons of ordinary skill in the art.

Realtime's position that CIDD and CDDD are definite comes down to its repeated mantra that they are simply the "reverse" of CIDC and CDDC.  But this is demonstrably incorrect based on review of the patents.  *See* (*See* Defs. Op. Br. 14-16.)  CIDC and CDDC analyze *unencoded* data to see if the data type is recognized, and select *encoders* based on whether or not the data type is recognized.  (*Id.*)  Even Realtime does not suggest that the CIDD and CDDD decompression techniques do anything akin to the "reverse" of this.

In sum, Realtime has not provided the Court with any reasoned analysis or explanation of how a person of ordinary skill would get from the words CIDD and CDDD to Realtime's ascribed meaning.  Realtime appears to concede that the patent specifications do not perform that task.  Thus, the Court should conclude that the claims are indefinite.

### C.    No Genuine Dispute of Material Fact Precludes Summary Judgment

There are no material disputed facts that preclude this Court from granting summary judgment on either issue.  Of the forty-nine facts Defendants put forth as undisputed, Realtime admitted eleven outright[2] and the Court should also take as admitted twenty-three more[3] as to which Realtime disputed on the ground that "Defendants attempt to summarize," but did not say that anything in any "summary" was incorrect.

The dispute between the parties over whether the descriptor "indicates," how the decompression algorithm is determined, and whether  CIDD or CDDD are terms with known

---

[2] *See* Realtime's Response to Defs.' Statement of Undisputed Facts ¶¶ 1-4, 6-7, 13, 16, 39, and 44-45.
[3] *Id.* at ¶¶ 14-15, 17-30, 32, 34, 42-43, 46- 48.

meaning in the art is discussed above.[4]   The content of the patents speaks for itself, so these are

not genuine disputes of fact.

## III.    CONCLUSION

For the foregoing reasons, the Court should hold that claims 1, 7, 8, and 13 of the '747

patent and claims 1, 4, 6, 7, and 12 of the '651 patent are invalid for failing to comply with the

requirements of 35 U.S.C. § 112.

Dated: April 25, 2012                                 Respectfully submitted,

                                                      By: */s/ Gregory H. Lantier*
                                                      Gregory H. Lantier
                                                      WILMER CUTLER PICKERING HALE AND DORR
                                                      LLP
                                                      1875 Pennsylvania Ave., N.W.
                                                      Washington, DC 20006
                                                      Phone: (202) 663-6327
                                                      Fax: (202) 663-6363
                                                      Gregory.Lantier@wilmerhale.com

                                                      William F. Lee
                                                      Mark G. Matuschak
                                                      WILMER CUTLER PICKERING HALE AND DORR
                                                      LLP
                                                      60 State Street
                                                      Boston, MA 02109
                                                      Phone: (617) 526-5000
                                                      Fax: (617) 526-6000
                                                      William.Lee@wilmerhale.com
                                                      Mark.Matushak@wilmerhale.com

                                                      ***Attorneys for Credit Suisse Holdings (USA),
                                                      Inc. and Credit Suisse Securities (USA),
                                                      LLC***

                                                       */s/ Daniel A. DeVito (with permission)*

---

[4]   Realtime disputed a number of  facts (¶¶ 5 and 8-12) that have no real bearing on summary
judgment; and one (¶ 31) because Defendants quoted an extract from the '747 patent rather than
"the entire '747 patent application," and another because a Defendants' typographical error said
"encoder" rather than "decoder" - the intended substance of this fact was admitted (¶ 44).

Daniel A. DeVito
SKADDEN ARPS SLATE MEAGHER & FLOM
LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (917) 777-3210
Daniel.DeVito@skadden.com

Matthew D. Buchanan
Gareth DeWalt
SKADDEN ARPS SLATE MEAGHER & FLOM
LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
Phone: 650-470-4500
Fax: 650-470-4570
matthew.buchanan@skadden.com
gareth.dewalt@skadden.com

***Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co. Incorporated, J.P.
Morgan Chase & Co., J.P. Morgan
Securities, Inc., J.P. Morgan Clearing Corp.,
The Goldman Sachs Group, Inc., Goldman,
Sachs & Co., and Goldman Sachs Execution
& Clearing, L.P.***

By: */s/ Gregory T. Casamento (with
permission)*
Edwin R. DeYoung
Roger Brian Cowie
Roy W. Hardin
M. Scott Fuller
Galyn Gafford
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

Gregory T. Casamento
LOCKE LORD LLP
Three World Financial Center
New York, New York 10281-2101

Phone: (212) 415-8600
Fax: (212) 303-2754

**Attorneys for Defendants HSBC Bank USA,
N.A.
and HSBC Securities (USA), Inc.**

By: */s/ Steven Cherny* (with permission)
Steven Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Phone: 212-446-4965
Fax: 212-446-4900
steven.cherny@kirkland.com

Amanda Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Phone: 312-862-2011
Fax: 312-862-2200
amanda.hollis@kirkland.com

**Attorneys for Defendants BNY ConvergEx
Group, LLC and BNY ConvergEx
Execution Solutions, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served electronically on April 25, 2012 on all counsel of record.

Nicole E. Feit