UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 1 0 2012

------------------------------------ X
REALTIME DATA, LLC d/b/a IXO,        :
                                     :        11 Civ. 6696 (KBF)
                Plaintiff,           :        11 Civ. 6701 (KBF)
                                     :        11 Civ. 6704 (KBF)
        -v-                          :
                                     :        MEMORANDUM & ORDER
MORGAN STANLEY, et al.,              :
                                     :
                Defendants.          :
------------------------------------ X
REALTIME DATA, LLC d/b/a IXO,        :
                                     :
                Plaintiff,           :        11 Civ. 6697 (KBF)
                                     :        11 Civ. 6699 (KBF)
        -v-                          :        11 Civ. 6702 (KBF)
                                     :
CME GROUP INC., et al.               :        MEMORANDUM & ORDER
                                     :
                Defendants.          :
------------------------------------ X
REALTIME DATA, LLC d/b/a IXO,        :
                                     :        11 Civ. 6698 (KBF)
                Plaintiff,           :        11 Civ. 6700 (KBF)
                                     :        11 Civ. 6703 (KBF)
                                     :
        -v-                          :        MEMORANDUM & ORDER
                                     :
THOMSON REUTERS, et al.              :
                                     :
                Defendants.          :
------------------------------------ X

KATHERINE B. FORREST, District Judge:

        By letter dated April 27, 2012, Morgan Stanley, Goldman

Sachs, and J.P Morgan (the "Moving Bank Defendants") have moved

for a protective order with respect to discovery relating to

"Topic 5" from Realtime's letter dated April 12, 2012.  Topic 5

provides for "Your profits from Your Fast feeds."  In its

responsive letter dated April 30, 2012, plaintiff Realtime Data, LLC ("Realtime") states that it has agreed to narrow the materials sought to latency-sensitive trading systems.

In summary, Realtime's justification for seeking such discovery relates to a portion of a potential damage theory in which it seeks to demonstrate that the unlicensed use of Realtime's patented technology has enabled the moving Bank defendants to reduce end-to-end latency, thereby increasing trading volumes and increasing profits. Realtime does not dispute that FAST feeds result in some latency--the argument is that given the amount of data that FAST is able to transmit, combined with its relative latency in doing so, it provides overall benefits. Realtime argues that it should be entitled at this stage of the proceeding to explore the level of profitability obtained as a result of this theoretical utilization/benefit.

In summary, the Moving Bank Defendants argue that the entire premise of Realtime's theory is wrong: that FAST does not in fact reduce end-to-end latency for their algorithmic trading services; indeed, they argue that FAST increases latency. In addition, they argue that the theory is a "non-starter" because their trading algorithms and systems are unaffected by the format in which market data is received. They rely upon the fact that once FAST feeds hit what this Court

considers the "entry point" for the banks, e.g., at their "front door," that banks then decompress any FAST feeds and convert them into a normalized format with all other data.

The parties recite documents which they assert support their respective positions.

At its essence, the protective order sought by the moving defendants is based on arguments as to ultimate relevancy--and are not focused on the expense or burden that the discovery sought would place upon them.  By way of protective order, they are asking the Court to rule now, and dispositively, that Realtime's damages theory lacks merit and cannot be presented in the form of proposed expert opinions or at trial.  The Court is unwilling to make such a ruling at this stage of the proceedings.

The Moving Bank defendants present serious arguments regarding what may or may not prove to be the ultimate relevancy of the discovery plaintiff is seeking.  For instance, an assertion that FAST enables increased profitability would need to be supported by evidence that in a but for world this profitability could not otherwise have been achieved--a proposition that may be very hard to prove.  However, the Court is mindful of (1) the reality that it will not bifurcate this matter into liability and damages phases--and therefore damage--related discovery must occur now, and (2) that the factual

issues as to whether there is a reduction in end-to-end latency, or not, and whether the volume of data that comes in the "door" of the banks, combined with algorithmic trading systems, enable more volume to be processed than would otherwise be processed in the absence of FAST feeds, does therefore meet the definition of relevance under Rule 26.

Whether or not FAST itself provides the banks with a competitive advantage vis-à-vis each other (because apparently they all receive, by necessity, the same FAST feeds from the exchanges at precisely the same time) is not necessarily at the heart of the inquiry.  If overall volume is increased for everyone, that could potentially factor into a reasonable royalty charged to either the exchanges (based on what they are enabling downstream) or the bank if there would indeed be a separate negotiation (a point which this Court does not at this time reach).

The Court is therefore unwilling at this time to prevent Realtime from exploring their theory of damages.  However, the Court is also mindful of various sensitivities that the provision of the discovery sought may carry.  Therefore, the Court orders the following alternatives, to be chosen at the option of the moving Bank Defendants--and also invites the Moving Bank Defendants to propose an alternative to the Court of what they would be minimally sufficient but meet their

sensitivity concerns and the Court will make a determination as to reasonableness:

1. They provide the discovery sought as narrowed in Realtime's April 30 letter to latency-sensitive trading systems only; or

2. They provide a declaration from an individual with knowledge as to (a) what the volume  of trades is using non-FAST feeds compared to trades that are associated with FAST feeds-- with any caveats as to how this is or is not "apples to apples"; (b) whether any higher trading volume associated with latency-sensitive trading systems where FAST feeds have brought market data to the "door", has in fact resulted in increased trading volume that would not otherwise have occurred and therefore whether there are increased fees associated with that volume and therefore profits; and (c) the approximate level of those "profits" associated with trades where data originated with FAST feeds expressed as a percentage of "profits" for those that are not (if this option is chosen, plaintiff may depose the declarant on the declaration);

3.  Documents (or a document) sufficient to show only the amount of profit attributable to latency-sensitive trading systems--including a piece of paper created for this purpose which presents that figure as a gross number by trading system; or

4. An alternative suggested to the Court in good faith by the Moving Bank Defendants to provide some form of adequate discovery.

The Court also warns the parties of the obvious, which is that to the extent that the Moving Bank Defendants will want to utilize additional information or data in connection with opposing the presentation of a damage theory relating to "Topic 5," they will need to be sure to have produced those materials during the discovery phase.

        SO ORDERED:

Dated:    New York, New York
          May  10 , 2012

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge