USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 02 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
REALTIME DATA, LLC d/b/a IXO,            :
                                         :         11 Civ. 6696 (KBF)
                    Plaintiff,           :         11 Civ. 6701 (KBF)
                                         :         11 Civ. 6704 (KBF)
           -v-                           :
                                         :
MORGAN STANLEY, et al.,                  :         MEMORANDUM & ORDER
                                         :
                    Defendants.          :
------------------------------------- X
REALTIME DATA, LLC d/b/a IXO,            :
                                         :         11 Civ. 6697 (KBF)
                    Plaintiff,           :         11 Civ. 6699 (KBF)
                                         :         11 Civ. 6702 (KBF)
           -v-                           :
                                         :
CME GROUP INC., et al.                   :         MEMORANDUM & ORDER
                                         :
                    Defendants.          :
------------------------------------- X
REALTIME DATA, LLC d/b/a IXO,            :
                                         :         11 Civ. 6698 (KBF)
                    Plaintiff,           :         11 Civ. 6700 (KBF)
                                         :         11 Civ. 6703 (KBF)
                                         :
           -v-                           :
                                         :         MEMORANDUM & ORDER
THOMSON REUTERS, et al.                  :
                                         :
                    Defendants.          :
------------------------------------- X

KATHERINE B. FORREST, District Judge:

   Plaintiff Realtime Data, LLC ("Realtime" or "plaintiff")
has sued over 18 defendants in nine separate actions for patent
infringement.[1] The actions have been consolidated for pre-trial

---

[1] The number of defendants varies according to whether parent, subsidiaries
and sister companies are grouped together or separately. If counted as
individual defendants, the total number of defendants is over 30; grouped
according to family of company the total is 18.

1

proceedings. Realtime served initial sets of infringement contentions in 2010 (the "2010 infringement contentions") and then supplemental infringement contentions at various points during the spring of 2012 (the "supplemental infringement contentions"). In its 2010 infringement contentions, Realtime asserted direct infringement and included a "placeholder" for the doctrine of equivalents. Two years later, its supplemental infringement contentions did not contain a reference to the doctrine of equivalents.

On June 15, 2012, Realtime submitted an expert report from Michael Ian Shamos, Ph.D. (the "Shamos Report") relating to infringement of the patents-in-suit. The Shamos Report sets forth opinions stating that defendants have infringed the patents directly and under the doctrine of equivalents. Defendants have moved to strike those portions of the Shamos Report that contain opinions regarding the doctrine of equivalents.

For the reasons set forth below, defendants' motion to strike is GRANTED.

## DISCUSSION

The procedural history of this matter is complex and each of the dockets relating to the various above-captioned actions now amount to entries covering more than 100 pages. For

purposes of this motion, the Court refers only to the procedural facts necessary to resolution of this motion.

The story of the infringement contentions started more than two years ago in the United States District Court for the Eastern District of Texas, where certain defendants in the above-captioned actions were originally sued. Those actions (the "Texas actions") were later transferred to this Court. During the time that those actions were pending in the Eastern District of Texas, the parties were following that court's Local Patent Rules. See Local Rules, E.D. Tex., Appx. M ("Patent Rules") (July 16, 2012), available at http://www.txed.uscourts.gov/page1.shtml?location=rules. Among the relevant patent rules was a requirement that "not later than 10 days" prior to the case management conference, "a party claiming infringement must serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions." Id. at Rule 3-1 (emphasis added). That disclosure was required to include, inter alia, "whether each element of each asserted claim is claimed literally present or present under the doctrine of equivalents." Id. at 3-1(d).

In the Texas actions, Realtime served an initial series of infringement contentions on January 22, 2010. Realtime served additional infringement contentions on July 2, 2010 and October 15, 2010 (what the Court has defined as the "2010 infringement

3

contentions"). Realtime's 2010 infringement contentions contained boilerplate references to the possibility of future assertions under the doctrine of equivalents. For instance, in its disclosure to CME Group., Inc., et al., Realtime made the following general statements:

> For any limitation that is found to be not literally present, Realtime Data asserts that defendants induce and/or contribute to infringement by others and/or that such limitation is present under the doctrine of equivalents.
>
> At present, Realtime Data lacks specific knowledge as to which, if any, limitations of the asserted claims the named defendants believe not to be literally embodied by the accused products and, hence, as to whether Realtime Data will be contending that any limitations of the asserted claims (and if so, which ones) are equivalently embodied by the accused products. To the extent that any differences are alleged to exist between the above-identified claims and the Accused Instrumentalities/acts, such differences are insubstantial. Defendants' Accused Instrumentalities perform substantially the same function, in substantially the same way to yield substantially the same result, and therefore Defendants infringe under the doctrine of equivalents. Moreover, pursuant to Patent Local Rule 3-6, Realtime Data reserves the right to amend its Infringement Contentions to specifically assert infringement by the doctrine of equivalents in light of the Court's claim construction.

Following transfer to this Court, a schedule was established for all remaining pre-trial proceedings and a firm trial date was set for November 26, 2012. When this Court set that schedule, Realtime did not state that it would need an

4

additional opportunity to amend its contentions to add detail regarding the doctrine of equivalents.

At a conference with the Court on March 16, 2012, Realtime represented that it had served supplemental infringement contentions the prior Monday. (Tr. of Conf. (Mar. 16, 2012) (hereinafter "Tr.") at 39.) At that conference, Realtime stated that it needed to complete its review of source code and would then provide defendants with its final infringement contention "maps" (or charts) by April 16, 2012. (Tr. at 44.) Defendants committed to serve final invalidity contentions by April 30, 2012. Realtime did not ask the Court for an opportunity to amend its infringement contentions in light of the parties' proposals on claim construction or to have an opportunity to revise those contentions following a ruling on claim construction.

Realtime served many defendants with supplemental infringement contentions in March 2012 (and continued to supplement its contentions subsequent to that date). Realtime's supplemental infringement contentions contain no boilerplate reservations and do not mention the doctrine of equivalents at all. In its letter to this Court opposing defendants' motion to strike, Realtime argues that the supplemental infringement contentions were just that--supplemental. (See Letter from Robert A. Cote, Counsel for Realtime, to Hon. Katherine B.

5

Forrest (June 29, 2012) ("Realtime June 29 Letter") at 2 ("Defendants suggest that because supplemental claim charts (not an Amended 3-1(d) Disclosure, a substantive distinction, do not themselves explicitly state reliance on the DOE, Realtime has somehow waived its reliance. To the contrary, Realtime has never expressly or impliedly disclaimed reliance on the DOE.").)

The supplemental infringement contentions contained substantial additions to, and ultimately modifications of, the 2010 infringement contentions: claims of infringement as to certain patents were dropped altogether, and for some defendants the Accused Instrumentalities changed entirely. In short, for a number of defendants the references in the Initial Infringement Contentions to Accused Instrumentalities became entirely irrelevant since those instrumentalities were no longer at issue.

A. The Claim Construction Process

As discussed further below, plaintiff's assertions regarding the doctrine of equivalents are based on the parties' proposed alternative claim constructions. A chronology of events regarding the claim construction process thus provides useful context.

In February 2012, the parties exchanged proposed claim constructions. Opening briefs on terms requiring construction were due on March 16, 2010. Between February and March, 2012,

6

Realtime knew the differences between the parties' proposed constructions; if it believed that such differences were essentially meaningless, it could have included specific contentions regarding the doctrine of equivalents in the infringement supplements it served in March 2012. If for some other reason it believed claim construction raised doctrine of equivalents issues, it should have immediately raised that issue with the Court. It failed to do so.[2]

The Court held a Markman hearing on May 4, 2012. At that hearing, the parties presented live expert testimony. The Court posed a number of questions. Throughout the proceeding, neither counsel for plaintiff nor plaintiff's expert ever indicated that certain proposed constructions for particular terms were substantially the same--indeed, there was extensive testimony and briefing on the differences in meaning and effect of the proposed constructions.

On June 15, 2012, plaintiffs provided defendants with the Shamos Report in which the doctrine of equivalents features prominently. In that report, Dr. Shamos opines that whether the

---

[2] Realtime argues that its March supplements were merely claim charts--and that there is no requirement (in this Court's Individual Patent Rules or the Eastern District of Texas' local patent rules) that claim charts contain details on the doctrine of equivalents. (See Realtime June 29 Letter at 2-3.) First, that ignores that these documents are, on their faces, entitled "Supplemental Infringement Contentions." The argument also ignores the plain fact that nowhere--not in the claim charts and not in any supplemental or amended contentions--did Realtime ever set forth the required detail regarding its assertions that defendants have infringed under the doctrine of equivalents.

7

Court ultimately adopted plaintiff's claim construction or defendants' would be irrelevant--since defendants nevertheless infringed under the alternative construction pursuant to the doctrine of equivalents.

The Court issued its Markman ruling on June 22, 2012. The Court in large part construed the claims consistently with defendants' proposed constructions.

B. The Shamos Report

Plaintiff never amended its infringement contentions to add any of the required detail regarding the doctrine of equivalents. This Court's Local Patent Rule 1(a)(v) requires that "[n]ot later than 14 days after appearance in th[e] action," a party must disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Individual Practices in Civil Cases, Judge Katherine B. Forrest, at Appx. B at Rule 1(a)(v). Plaintiff therefore failed to preserve infringement claims under the doctrine of equivalents. See Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 774 (Fed. Cir. 2004)(failure to give proper notice to alleged infringer of doctrine of equivalents barred use of the doctrine); Optimumpath, LLC v. Belkin Int'l, Inc., 2011 WL 1399257, at *8 (N.D. Cal. Apr. 12, 2011)(recognizing that attempts to assert claims under the doctrine of equivalents with

8

blanket statements have been rejected); <u>Rambus Inc. v. Hynix Semiconductor, Inc.</u>, Nos. C-05-00334, C-05-2298, C-06-00244, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008)(boilerplate reservations insufficient); <u>Nike, Inc. v. Adidas Am., Inc.</u>, 479 F. Supp. 2d 664, 670 (E.D. Tex. 2007) (Nike's initial infringement contentions contained two boilerplate paragraphs regarding the doctrine of equivalents; later contentions do not mention the doctrine; the court declined to allow assertion of the doctrine when discovery was to close in a month); <u>MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.</u>, No. C 01-4925, 2004 WL 5363616, at *5 (N.D. Cal. Mar. 2, 2004)(a blanket statement that does not identify where each element of each claim is found is insufficient and does not point out each asserted element of each asserted claim that there is infringement of the doctrine of equivalents).

The Shamos Report does, however, opine extensively as to infringement under the doctrine of equivalents. The Shamos Report is written in the nature of plaintiff "hedging its bets" as to the Court's <u>Markman</u> ruling (which was released one week later). In a sort of "heads I win, tails you lose" scenario, the Shamos Report finds infringement under either plaintiff's or defendants' proposed constructions.

The Shamos Report, however, is not a set of infringement contentions as contemplated by either Rule 1(a)(v) of this

9

Court's Individual Patent Rules or Rule 3-1(d) of the Eastern District of Texas' Local Patent Rules. There is no provision in this Court's Individual Patent Rules for infringement contentions to be revealed for the first time by way of expert report, or at such a late date.

C. Plaintiff Argues No Prejudice

Plaintiff argues that the Shamos Report does not result in prejudice to any defendant.

As an initial matter and as discussed above, it is clear that plaintiff has not complied with relevant local or individual patent rules regarding the detail required for infringement contentions. Plaintiff cannot now, sua sponte, amend those rules or give itself a "pass" as to those rules without having first sought leave of court--and no such leave was sought. This Court's Individual Patent Rules are necessary to insure a fair and orderly resolution of a patent dispute. This particular matter has required substantial work by this Court to manage--indeed, the Court has analogized it to the "herding of cats" and indeed, many, many cats of various varieties. Nevertheless, the matter is on track for trial in November and this Court has every expectation that it will proceed as scheduled. Maintaining orderly case management is necessary to resolution of this matter and the effective and efficient administration of justice. Compliance with this

Court's Individual Patent Rules is part of that process. Plaintiff simply failed to comply with those rules and cannot do so now through a "backdoor process." Several defendants have stated that they will, in fact, be significantly prejudiced by belated assertions of infringement under the doctrine of equivalents.[3] Defendant Thomson Reuters has stated that it would have developed a factual record regarding Dr. Shamos' theories but is now unable to do so because discovery has closed. (See Letter from Constance S. Hutner, Counsel for Thomson Reuters to Hon. Katherine B. Forrest (July 17, 2012) at 2 ("Realtime's unexcused delay in raising its DOE allegations has limited Defendants' ability to identify prior art that would render the patents-in-suit invalid. If Defendants had notice of Realtime's theories of equivalents during fact discovery, they would have focused on prior art falling within the alleged range of equivalents…Having such knowledge might also have impacted the third party depositions Defendants chose to take and Defendants' invalidity positions . . . [it] has also prevented Defendants from pursuing fact discovery concerning the insubstantial differences test."); see also Letter from Constance S. Hutner to Hon. Katherine B. Forrest (June 28, 2012) at 3.)

---

[3] As the Court noted, fact discovery in this matter closed prior to defendants' receipt of the Shamos Report.

11

Similarly, NYSE Euronext, NYSE Arca, Inc., NYSE Amex, LLC, Securities Information Company (collectively "NYSE"), and Options Price Reporting Authority LLC ("OPRA"), stated that their summary judgment motions (now submitted according to a schedule previously set), <u>Markman</u> positions, discovery and invalidity positions "have all been developed in response to the infringement contentions Realtime actually stated." (Letter from James H. Shalek to Hon. Katherine B. Forrest (June 29, 2012) at 2.)

Defendants Morgan Stanley, Morgan Stanley & Co. Inc., Goldman Sachs Group, Inc., Goldman Sachs & Co.,, Goldman Sachs Execution & Clearing, L.P., J.P. Morgan Chase & Co., J.P. Morgan Securities, Inc., and J.P. Morgan Clearing Corp. (collectively referred to as the "Bank Defendants"), also stated:

> The prejudice stemming from Realtime's failure to provide proper notice of its infringement theories under the doctrine of equivalents is neither theoretical nor insubstantial. Indeed, our entire case strategy has been developed under the understanding that Realtime was not pursuing claims based on the doctrine of equivalents.

(Letter from Daniel A. DeVito to Hon. Katherine B. Forrest (June 29, 2012) at 2.) The Bank Defendants also assert that they would have developed additional facts as part of the discovery process, now foreclosed. (<u>Id.</u>)

Had defendants understood that plaintiff would assert that different claim constructions would result in "insubstantial

12

differences" regarding infringement, the discovery process would have taken that position into account. This case has been too thoroughly and actively litigated for that not to have been the case. There is undoubted prejudice to defendants now to allow only a battle of the experts without the development of a factual record on this issue. That is not the way litigation is supposed to work and it will not work so here.

## CONCLUSION

For the reasons set forth above, this Court GRANTS defendants' motion to strike those portions of the Shamos Report and any related testimony regarding the doctrine of equivalents. The letters underlying this issue will be filed publicly on the docket unless the parties notify the Court within five (5) days that they should be filed under seal.

SO ORDERED:

Dated:   New York, New York
         August 2, 2012

_____
KATHERINE B. FORREST
United States District Judge