IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REALTIME DATA, LLC d/b/a IXO, <br><br> Plaintiff, <br><br> v. <br><br> MORGAN STANLEY, *et al.*, <br><br> Defendants. | No. 11 Civ. 6696 (KBF) <br><br> No. 11 Civ. 6701 (KBF) <br><br> No. 11 Civ. 6704 (KBF) <br><br> ECF Case |

**REALTIME'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1(b) IN OPPOSITION TO CREDIT SUISSE'S JOINDER TO CME'S AND NYSE AND OPRA'S MOTIONS FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Pursuant to S.D.N.Y. Local Civil Rule 56.1(b) ("Local Rule 56.1(b)"), Plaintiff Realtime Data, LLC d/b/a/ IXO ("Realtime") respectfully submits its response to Credit Suisse's Statement of Undisputed Facts in Support of Joinder to CME Defendant's Motion for Summary Judgment of Noninfringement Based on the Lack of Determining a Data Block or Field Type; NYSE and OPRA's Motion for Summary Judgment of Noninfringement Based on the Absence of Encoding, Data Block (Or Field) Type, and Selecting; and NYSE and OPRA's Motion for Summary Judgment of Noninfringement: Data Stream, Content Independent Encoding, and Lossless ("Defendants' Statement of Undisputed Facts").

## REALTIME'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1(b), Realtime hereby responds to Defendants' Statement of Undisputed Facts, which are set forth below for the convenience of the Court, as follows:

1. Realtime asserts that Defendants Credit Suisse Holdings (USA), Inc. and Credit Suisse Securities (USA), LLC (collectively, "Credit Suisse") infringes independent claim 108 and dependent claims 95, 97, and 112 of the '651 Patent (the "Asserted Claims"). (Decl. of Nicole E. Feit ("Feit Decl.") at Ex. Q (Exhibit 4 to Expert Report of Michael Ian Shamos ("Shamos Report").)

**Realtime's Response**

Undisputed for purposes of this motion. Realtime notes that Credit Suisse submitted an unsigned Declaration of Nicole E. Feit in support of Credit Suisse's Joinder, therefore the Declaration itself and the attached Exhibits A-Q are defective.

2. Realtime does not assert that Credit Suisse infringes any other claim of any patent-in-suit. (*See id.*)

**Realtime's Response**

Undisputed for purposes of this motion.

3. Realtime asserts that Credit Suisse infringes the Asserted Claims by providing and/or using systems (the "Accused Credit Suisse Decoders") for decoding fourteen data streams or feeds sent to Credit Suisse by third party data providers and exchanges:

- ArcaBook Decoding
- ArcaBook Decoding (Exegy)
- CME Market Depth Decoding (Flow 1)
- CME Market Depth Decoding (Flow 2)
- NSX Decoding
- OPRA Decoding (Flow 1)
- OPRA Decoding (Flow 2)
- SR Labs - ArcaBook Decoding
- SR Labs - Amex Options Decoding
- SR Labs - CME Decoding
- SR Labs - ISE Market Data Feed Decoding[1]
- SR Labs - OPRA Decoding
- SR Labs - Top of PHLX Options Decoding
- Broadway Tech CME Decoding

[1] In the Shamos Expert report, the cover page of the claims chart directed to ISE Market Data Feed Decoding is mislabeled "SR Labs Area Book Decoding."

(Feit Decl. Ex. Q.)

**Realtime's Response**

Disputed as to Credit Suisse's footnote 1. Exhibit 4 to the Supplemental Shamos Expert Report does not label anything as "SR Labs Area Book Decoding."

4.  Realtime's infringement theory against the Accused Credit Suisse Decoders is the same as Realtime's theory against the CME Defendants—that checking a value satisfies the requirement that the system determine a data block type or data field type. (*See* CME Defendants' Motion For Summary Judgment of Noninfringement Based on the Lack of Determining a Data Block Type or Field Type filed in *Realtime Data, LLC v. CME Group, Inc., et al.*, Consolidated Case Nos. 1:11-cv-6697 (Dkt. No. 659), 1:11-cv-6699, and 1:11-cv-6702 (the "CME Motion").

2

**Realtime's Response**

Disputed. The Decoding Claims do not contain the limitation of determining a data block type or data field type and "the lossless encoders are selected" is not an express limitation of the Asserted Claims, but is rather an attribute of the data stream being decoded.

5. For example, with regard to the Accused ArcaBook Decoder, Dr. Shamos states, "lossless encoders are selected based on the relation between the current value of the field and the previous value of the field, i.e., through analyses of content in the data fields." (Feit Decl. Ex. E at 1; *see also* Feit Decl. Exs. B-D, F-O.)

**Realtime's Response**

Undisputed that Dr. Shamos states "lossless encoders are selected based on the relation between the current value of the field and the previous value of the field, i.e., through analyses of content in the data fields" for a limitation that is not an expressly recited step of the Asserted Claims, but is rather an attribute of the data stream being decoded.

6. The parties have agreed that "analyses of content of [the] data blocks [or fields]" is properly construed as "directly examining the content of the data to be compressed to determine the data block (or data field) type of that data." (Dkt. 506 at 4).

**Realtime's Response**

Undisputed for purposes of this motion, however, the citation is incorrect.

7. Thus, these claims require the same limitation of determining the data block type or data field type, and, like against CME, Realtime's infringement theory against Credit Suisse is based on a data block type or data field type being a "relation" between two values. (*Id.*; Feit Decl. Ex. E at 1; *see also* Feit Decl. Exs. B-D, F-O.)

**Realtime's Response**

Disputed. The Decoding Claims do not contain the limitation of determining a data block type or data field type and "the lossless encoders are selected" is not an express limitation of the Asserted Claims, but is rather an attribute of the data stream being decoded. (*See* '651 patent Claims 95, 97, 108, and 112.) The "lossless encoders are selected based on the relation between

the current value of the field and the previous value of the field, i.e., through analyses of content in the data fields." (*See* Shamos Decl. Ex. 1.)[1]

8.  This Court's claim construction order states that this limitation requires a "[c]ategorization of the data in the field (or block) as one of ASCII, image data, multimedia data, signed and unsigned integers, pointers, or other data type." (Dkt. 498 at 39.)

**Realtime's Response**

Undisputed for purposes of this motion.

9.  The Court's claim construction order states: "checking a value is not determining a data block type or data field type." (Dkt. 498 at 23-26).

**Realtime's Response**

Disputed. The Markman Order construed the term "[c]ategorization of the data in the field (or block) as one of ASCII, image data, multimedia data, signed and unsigned integers, pointers, or other data type." (Dkt. 498 at 39-40.)

10. Realtime has adopted the same positions as to all accused instrumentalities from all Defendants in this action as it relates to the "encoder" and "selecting" limitations in the Asserted Claims. (Feit Decl. Ex. A, Shamos Report at ¶ 71.)

**Realtime's Response**

Disputed. Realtime established through each Defendant's source code how that Defendant's accused products infringe the Asserted Claims. (*See* Shamos Decl. Ex. 1.)

11. To support his contention that the Accused Credit Suisse Decoders meet the "encoder" limitation, Dr. Shamos points to the same alleged FAST operators as he does for the NYSE Defendants—specifically the "copy" and/or "default" operators. (*See, e.g.*, Feit Decl. Ex. A, Shamos Report at ¶ 71; Feit Decl. Ex. B ("The presence map and the message category serve as a descriptor which indicates whether an operator based encoder such as copy/default encoder (lossless encoder) or a transfer encoder (lossless encoder) was used to encode the data fields comprising the NSX message"); *see also* Feit Decl. Exs. C-O; NYSE Encoding Motion at 14-17.)

---

[1] "Shamos Decl." refers to the Declaration of Michael Ian Shamos, Ph.D., J.D., In Support of Plaintiff Realtime's Mot. For Summary Judgment of Infringement of All Asserted Claims of the Patents-In-Suit by Defendants (July 17, 2012).

**Realtime's Response**

Disputed. The "encoder" limitation is not an expressly recited step in the Decoding Claims, but is rather an attribute of the data stream being decoded. (*See* '651 patent.) Moreover, Dr. Shamos points to encoding techniques such as field encoding techniques using "copy", "increment" and/or "default" FAST operators and stop-bit encoding techniques for meeting the "encoder" limitation. (*See* Shamos Decl. Ex. 1.)

12. To support his contention that the Accused Credit Suisse Decoders meet the "selecting" limitations of the Asserted Claims, Dr. Shamos relies on the same contentions that he does for the NYSE Defendants. (Feit Decl. Ex. A, Shamos Report at ¶ 71.)

**Realtime's Response**

Disputed. The Decoding Claims contain the limitation "lossless encoders are selected based on the relation between the current value of the field and the previous value of the field, i.e., through analyses of content in the data fields" which is not an expressly recited step, but is rather an attribute of the data stream being decoded. (*See* '651 Patent Claims 95, 97, 108, and 112.) Moreover, Dr. Shamos established through source code for Credit Suisse's Accused Decoders how Credit Suisse's Accused Decoders, including decoders for the FAST-encoded data feeds from CME, NYSE ArcaBook, NSX, ISE and PHLX Options, infringe the Asserted Claims. (*See* Shamos Decl. Ex. 1.)

13. Realtime has adopted the same positions as to all accused instrumentalities from all Defendants in this action as it relates to the "lossless" limitation in the Asserted Claims. (Feit Decl. Ex. A, Shamos Report at ¶ 71.)

**Realtime's Response**

Disputed. Realtime established through each Defendant's source code how that Defendant's accused products infringe the Asserted Claims. (*See* Shamos Decl. Ex. 1.) In addition, the cited Paragraph 71 to Dr. Shamos' Report does not discuss "lossless" limitation in the Asserted Claims.

14. In particular, for "lossless encoder," Realtime and Dr. Shamos point to the same alleged aspect of FAST as for the NYSE Defendants, specifically transfer encoding (called stop-bit encoding). (Feit Decl. Ex. A, Shamos Report at ¶ 71.)

**Realtime's Response**

Disputed. Realtime and Dr. Shamos point to encoding techniques such as field encoding techniques using "copy", "increment" and/or "default" FAST operators and stop-bit encoding techniques for meeting the "lossless encoder" limitation. (*See* Shamos Decl. Ex. 1.)

15. Credit Suisse hereby incorporates the facts as stated in the Local Rule 56.1 Statements filed in support of the CME Motion (Dkt. 663, Civil Action No. 1:11-cv-6697), the NYSE Encoding Motion (Dkt. 680, Civil Action No. 1:11-cv-6697), and the NYSE Lossless Motion (Dkt. 697, Civil Action No. 1:11-cv-6697) as if set forth fully herein.

**Realtime's Response**

Realtime hereby incorporates its responses the Local Rule 56.1 Statements filed in support of the CME Motion (Dkt. 663, Civil Action No. 1:11-cv-6697), the NYSE Encoding Motion (Dkt.680, Civil Action No. 1:11-cv-6697), the NYSE Lossless Motion (Dkt.697, Civil Action No. 1:11-cv-6697), as if set forth in full herein.

Dated: August 7, 2012                          Respectfully submitted,

**McKool Smith, P.C.**

*/s/ Brett E. Cooper*

Robert A. Cote
rcote@mckoolsmith.com
Brett E. Cooper
bcooper@mckoolsmith.com
Daniel J. Melman
dmelman@mckoolsmith.com
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Dirk D. Thomas
dthomas@mckoolsmith.com
1999 K Street NW, Suite 600
Washington, DC 20006
Telephone: (202) 370-8302
Facsimile: (202) 370-8344

**ATTORNEYS FOR PLAINTIFF
REALTIME DATA, LLC D/B/A/ IXO**

## CERTIFICATE OF SERVICE

The undersigned certifies that true and correct copies of the foregoing document were served via ECF to all counsel of record on August 7, 2012.

*/s/ Brett E. Cooper*
Brett E. Cooper

McKool 499154v1