USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 10 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
REALTIME DATA, LLC d/b/a IXO,           :
                                        :         11 Civ. 6696 (KBF)
                    Plaintiff,          :         11 Civ. 6701 (KBF)
                                        :         11 Civ. 6704 (KBF)
         -v-                            :
                                        :
MORGAN STANLEY, et al.,                 :
                                        :
                    Defendants.         :
------------------------------------ X
REALTIME DATA, LLC d/b/a IXO,           :
                                        :         11 Civ. 6697 (KBF)
                    Plaintiff,          :         11 Civ. 6699 (KBF)
                                        :         11 Civ. 6702 (KBF)
         -v-                            :
                                        :
CME GROUP INC., et al.                  :
                                        :
                    Defendants.         :
------------------------------------ X
REALTIME DATA, LLC d/b/a IXO,           :
                                        :         11 Civ. 6698 (KBF)
                    Plaintiff,          :         11 Civ. 6700 (KBF)
                                        :         11 Civ. 6703 (KBF)
                                        :
         -v-                            :         MEMORANDUM & ORDER
                                        :
THOMSON REUTERS, et al.                 :
                                        :
                    Defendants.         :
------------------------------------ X

KATHERINE B. FORREST, District Judge:

Defendants in a large patent infringement action--in which plaintiff Realtime Data LLC ("Realtime") alleges infringement of three of its patents: U.S. Patent No. 7,417,568 (the "'568 Patent"), U.S. Patent No. 7,714,747 (the "'747 Patent"), and U.S. Patent No. 7,777,651 (the "'651 Patent" and collectively

1

with the '568 and '747 Patents, the "patents-in-suit")--have brought 19 separate motions for summary judgment. The Court has previously dealt with a number of them, see Realtime Data, LLC v. Morgan Stanley, 2012 WL 4341808 (S.D.N.Y. Sept. 24, 2012), and now turns to the last one actively remaining on its docket-- the renewed motion for summary judgment for failure to comply with the written description requirement (what is referred to as "Motion No. 12" based upon the numbering system supplied by the Court for ease of reference given the number of motions).

Motion No. 12 was filed by defendants CME Group, Inc.; Board of Trade of the City of Chicago, Inc.; the New York Mercantile Exchange, Inc.; BATS Trading Inc.; International Securities Exchange, LLC; Chicago Board Options Exchange, Incorporated; Boston Options Exchange Group, LLC; NYSE Euronext; NYSE Arca, Inc.; NYSE Amex, LLC; Securities Industry Automation Corp.; Options Price Reporting Authority LLC; NASDAQ OMX Group, Inc.; and NASDAQ OMX PHLX, Inc. The motion is joined by the Bank Defendants[1] and the Data Provider Defendants.[2] (See 11 Civ. 6696, Dkt. No. 521; 11 Civ. 6698, Dkt. No. 393.) All moving

---

[1] The Bank Defendants are The Goldman Sachs Group, Inc.; Goldman, Sachs & Co., Goldman Sachs Execution & Clearing L.P.; J.P. Morgan Chase & Co.; J.P. Morgan Securities, Inc.; J.P. Morgan Clearing Corp.; Morgan Stanley; Morgan Stanley & Co., Incorporated; Credit Suisse Holdings (USA), Inc.; Credit Suisse Securities (USA) LLC; HSBC Bank USA, N.A.; and HSBC Securities (USA), Inc.

[2] The Data Provider Defendants refers to Thomson Reuters Corporation, Factset Research Systems, Inc., Bloomberg L.P., Interactive Data Corporation, Penson Worldwide, Inc. and Nexa Technologies, Inc.

2

defendants--the original and joinders--are referred to collectively as "defendants."

Motion No. 12 seeks summary judgment on the basis that the specifications for the patents-in-suit fail the written description requirement set forth in 35 U.S.C. § 112. Plaintiff and defendants have submitted dueling expert declarations with respect to each of the arguments raised in this motion. It is axiomatic that on summary judgment a court should not weigh evidence or make credibility determinations. Here, that would be required in order to decide the instant motion. Accordingly, Motion No. 12 must be denied.

I.  LEGAL STANDARDS

Issued patents carry a presumption of validity. 35 U.S.C. § 282. A party seeking to invalidate a patent at summary judgment must submit "clear and convincing evidence of facts underlying invalidity" such that no reasonable fact finder could find otherwise. See Trimed, Inc. v. Stryker Corp., 608 F.3d 1333, 1340 (Fed. Cir. 2010); Laryngeal mask Co. Ltd. V. Ambu A/S, 618 F.3d 1367 (Fed. Cir. 2010).

Summary judgment is warranted if the pleadings, the discovery and disclosure materials, along with any (admissible) affidavits, demonstrate that there is no genuine issue of fact necessitating resolution at trial. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986);

3

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists; all reasonable inferences should be drawn in favor of the non-moving party. See Liberty Lobby, 477 U.S. at 255; Cont'l Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991). The burden then shifts to the non-moving party to come forward with "admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhauser Co., 536 F.3d 140, 145 (2d Cir. 2008); see also Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1560-61 (Fed. Cir. 1995) ("When the movant's burden of establishing the lack of a genuine issue of material fact has been met 'in facial terms,' the nonmovant must point to 'some evidence in the record sufficient to suggest that his view of the issue might be adopted by a reasonable factfinder.'" (quoting Resolution Trust Corp. v. Juergens, 965 F.2d 149, 151 (7th Cir. 1992))). Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the moving party satisfies its burden on the motion by pointing to an absence of evidence to support an essential element of the non-movant's claim. See Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1389 (Fed. Cir. 1992).

In ruling on a motion for summary judgment, a court cannot, however, weigh the evidence or make credibility determinations: those are the functions of the jury. See Liberty Lobby, 477 U.S. at 255. Further, where dueling experts put forward contradictory opinions, upon which resolution of a material factual dispute depends, summary judgment is not appropriate. See Hodosh v. Block Drug Co., Inc., 786 F.2d 1136, 1143 (Fed. Cir. 1986) ("The fact issues herein must be resolved by trial in which the conflicting views of the experts will be subject to the refining fire of cross examination.").

Here, defendants seek summary judgment based upon Realtime's failure to comply with 35 U.S.C. § 112. That statute provides, in pertinent part, that a patent specification

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
>
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112 ¶¶ 1-2.

In determining whether a specification is sufficiently definite, a court must determine whether those skilled in the art would understand the scope of the claim when the claim is

5

read in light of the remainder of the specification to which it relates. See Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 692 (Fed. Cir. 2001). The claims must "delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005).

II. DISCUSSION

As stated, defendants have moved for summary judgment on the basis that plaintiff's specifications for the patents-in-suit fail the written description requirement of 35 U.S.C. § 112. There are material, disputed issues of fact preventing summary judgment.

A. The '747 Patent

There is no factual dispute that many of the '747 Patent's claims refer to "data packets." The question with respect to this portion of defendants' motion for summary judgment is whether the '747 Patent's specification adequately discloses packets as part of the invention.

Defendants argue that claims relating to data packets were only belatedly added to the '747 Patent. This, however, is not in and of itself unusual. The question is not whether claims relating to data packets were previously asserted, but whether the specification to which they relate sufficiently disclosed

6

them such that they can fairly be said to have been part of the original invention.

The main thrust of defendants' argument is that during reexamination proceedings, Realtime differentiated its claims relating to "data packets" from prior art that claimed "data blocks." In short, at that time, plaintiff asserted that prior art disclosed compression for data blocks but not for data packets, as the '747 Patent does. (See Mem. of Law in Supp. of Defs.' Mot. for Summ. J. (Dkt. No. 673) ("Mot. 12 Mem.") at 7 (citing Defs. Statement of Material Facts ¶¶ 12-13).) Defendants also argue that to obtain approval of the new claims relating to data packets, Realtime additionally stated that compressing a sequence of data is not the same as performing compression on a data block. (Id.) According to defendants, Realtime "repeatedly argued to the Patent Office that the use of 'data blocks' and the use of 'data packets' are fundamentally different and therefore require different forms of compression and decompression." (Id. at 7-8.) There is no dispute that the specification contains a reference to packets, at least in passing.

Defendants have proffered the expert opinion of Dr. James Storer, who opines that Realtime's differentiation of data packets from data blocks during reexamination precludes assertions now that the specification contains any disclosure

7

that compression is performed on the data block in order to create a data packet. (See Decl. of James Storer In Support of Defs.' Mot. for Summ. J. for Failure to Comply with the Written Descrip. Requirement (Dkt. No. 674) ("Storer Decl. Mot. 12") ¶ 20.)

Realtime's own expert, Dr. Michael Ian Shamos, opines that one skilled in the art would understand the specification to disclose data packets adequately. (Decl. of Michael Ian Shamos in Support of Pl. Realtime's Br. in Opp'n to Defs.' Renewed Mot. for Summ. J. for Failure to Comply with the Written Descrip. Requirement (Dkt. No. 760) ("Shamos Decl. Mot. 12") ¶¶ 4, 6 ("One of skill in the art would have understood from this statement that a data block can be a single bit, multiple files, a single packet, multiple packets, or any combination thereof. A packet may be part of a data block, or it might extend over several blocks . . .").) In direct response to Dr. Storer's opinion on this point, Dr. Shamos refers to various portions of the specification which he opines one skilled in the art would understand to disclose that which Dr. Storer claims is not disclosed. (Id. ¶ 11.)

It may well be that during reexamination Realtime relinquished that to which it now asserts ownership--that is, the particular use of data packets. However, this Court is caught between experts who each claim that one skilled in the

8

art would understand the specification in a particular manner. On a motion for summary judgment, the Court cannot weigh the evidence or choose between the experts. Accordingly, while there may well be merit to this argument, it must be left to a jury to determine.

B.   Twenty-Three Claims of the '568 and '651 Patents

Defendants also argue that twenty-three claims of the '568 and '651 Patents are invalid because they include limitations the common specification does not describe. Indeed, according to defendants, the Patent Office has rejected certain claims during the reexamination of a child of the '568 Patent and Realtime thereafter cancelled certain claims in that child patent. (Mot. 12 Mem. at 9-10.)

Again, defendants attempt to build support for their argument on the basis that the claims they seek to invalidate were added years after the original patents issued. (Id. at 10.) PTO Examiner Hughes apparently rejected the new claims as unsupported by the specification, but that determination remains under review. (Id.)

Here again, both plaintiff and defendants have submitted dueling opinions from experts. According to Dr. Storer, the specification does not provide a written description of the three concepts at issue: "packet-to-packet data dependency," "resetting the state machine to the adaptive table," or

9

outputting an executable file (from an algorithm). (Storer Decl. Mot. 12 ¶¶ 32-43.) Dr. Storer opines that that the written description does not require the packet-to-packet data dependency limitation in the '568 Patent or the packet independent encoding limitation in the '651 Patent. He does concede that the specification states that packet independent encoding is desirable. (Id. ¶ 32.) With respect to resetting the state machine, he states that the word "reset" does not appear in the specification. He disagrees with Dr. Shamos that resetting the state machine would be assumed by those skilled in the art. (Id. ¶¶ 36-37.) Finally, Dr. Storer states that one of ordinary skill in the art would not understand outputting algorithms to convey that Realtime had possession of the claimed species of outputting an "executable file." (Id. ¶ 43.)

In contrast, however, Dr. Shamos states that "[a] skilled artisan would have understood that packet-independent algorithms required each packet to carry all the information needed to decode its content without relying on any other packet . . . . As a consequence, a skilled artisan would have known that the common specification's reference to 'packet independence' means that the data packets are compressed (decompressed) one at a time without any packet-to-packet data dependencies." (Shamos Decl. Mot. 12 ¶ 16.) In addition, according to Dr. Shamos, although resetting the state machine is not specifically

mentioned in the specification, one skilled in the art would have understood that it was a necessary step that had to occur. (Id. ¶ 21.)  Finally, Dr. Shamos opines that failure to mention compilers in the specification is not fatal since one skilled in the art would also understand that compilers are implicitly required to translate high-level language into executable code--and that this has been true since the 1950's and well understood.  According to Dr. Shamos, although the specification references "algorithms," one skilled in the art would "clearly understand that 'algorithm,' as used therein, was not used in a merely theoretical sense, but was a component of executable code."  (Id. ¶ 28.)

In the context of summary judgment, the Court cannot weigh the opinions of Dr. Storer against those of Dr. Shamos.  The jury must do so.  Accordingly, summary judgment cannot be granted on these bases.

III. CONCLUSION

For the reasons set forth above, defendants' renewed motion for summary judgment for failure to comply with the written description requirement is DENIED.

The Clerk of the Court is directed to terminate the following motions: 11 Civ. 6697 - Dkt. No. 672; 11 Civ. 6699 - Dkt. No. 100; and 11 Civ. 6702 - Dkt. NO. 140.

SO ORDERED.

Dated:     New York, New York
           October 10, 2012

                                   _____
                                        KATHERINE B. FORREST
                                     United States District Judge